IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL NO. 15-00100 SOM/RLP |
| | ) | |
| ADAM LEE, | ) | |
| | ) | ORDER AFFIRMING BANKRUPTCY |
| Debtor/ | ) | COURT ORDERS |
| Appellant, | ) | |
| | ) | Bankr. Case No. 13-01356 (RJF) |
| | ) | Chapter 7 |
| | ) | |
| DANE S. FIELD, Trustee | ) | Adv. Pro. No. 14-90003 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ADAM LEE and YUKA YAHAGI LEE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER AFFIRMING BANKRUPTCY COURT ORDERS**

I.        **INTRODUCTION.**

         Debtor/Appellant Adam Lee appeals two rulings by the
bankruptcy court.  First, Lee claims that the bankruptcy judge
abused his discretion in even considering (and ultimately
denying) Lee's untimely, eleventh-hour motion to dismiss an
adversarial proceeding and should have instead continued the
trial and handled the motion to dismiss at a different time.
Because Lee shows no such abuse of discretion, the court affirms
the bankruptcy judge's decision to adjudicate Lee's motion.

         Lee also appeals the bankruptcy judge's determination
that Lee fraudulently transferred properties to himself and his
wife as tenants by the entirety.  Because Lee shows no clear

error with respect to the bankruptcy court's findings of fact, and because the bankruptcy court's conclusions of law are correct, the court affirms the bankruptcy court's determination as to the fraudulent transfer.

## II.      FACTS.

Lee filed a Chapter 7 bankruptcy petition.  See ECF No. 7-3, PageID # 175.  His bankruptcy Schedule A included three real estate parcels.  Two properties were on Palua Place and were listed as held in tenancies by the entirety.  The schedule stated that, with respect to one of the Palua Place properties, Lee had a 75% interest, and Alexandria Shiroma had a 25% interest.  The schedule stated that the other Palua Place property had approximately $838,000 in equity.  See ECF No. 14-1, PageID # 740.

Lee retained Chuck Choi as his attorney in September 2010 to look into a possible bankruptcy filing and into bankruptcy exemptions.  See Transcript of 341 Creditors' Meeting at 22-23, ECF No. 14-2, PageID # 753-54.  After meeting with Choi, Lee transferred the Palua Street properties so they were held in tenancies by the entirety for what he says was the purpose of avoiding creditors' claims.  Id. at 24-25, PageID # 755-56.

On January 14, 2014, the bankruptcy trustee filed an adversary proceeding, AP 14-90003, seeking to set aside those

2

property transfers as fraudulent.  <u>See</u> ECF No. 7-6, PageID
#s 263-270.  In a scheduling order filed on March 24, 2014, the
court set August 25, 2014, as the trial date for the adversary
proceeding.  <u>See</u> U.S. Bankr. Ct. # 14-90003, Dkt. # 14.  Motions
to dismiss were to be filed in time "to be heard not later than
28 days before the trial date."  <u>Id.</u>

On July 14, 2014, the parties stipulated to a
continuance of the trial for the adversary proceeding.  <u>See</u> U.S.
Bankr. Ct. # 14-90003, Dkt. # 33.  On July 24, 2014, the
bankruptcy court set a new trial date of February 2, 2015, for
the adversary proceeding, stating that the scheduling order of
March 24, 2014, otherwise remained in effect.  <u>See</u> U.S. Bankr.
Ct. # 14-90003, Dkt. # 34.

On January 15, 2015, although represented by counsel at
the time, Lee filed a pro se Motion to Dismiss Chapter 7
Bankruptcy Case and 3 Adversarial Proceedings.  <u>See</u> ECF No. 8-2.
Lee also filed a motion to shorten time so that the motion to
dismiss could be heard before the trial date of February 2, 2015.
<u>See</u> ECF No. 8-3.  On January 23, 2015, the bankruptcy court
denied the motion to shorten time.  <u>See</u> ECF No. 8-5.

The motion to dismiss described a conversation in which
the bankruptcy trustee had allegedly threatened not to refer
matters to Lee's attorney, Choi, until Lee's case was settled.
<u>See</u> ECF No. 8-2, PageID # 441.  Although Lee appeared to have had

in hand the factual bases for his motion by October 2014, he waited until several weeks before trial to file the motion.  <u>See</u> ECF No. 8-2, PageID # 475 (letter dated October 16, 2014, complaining that the bankruptcy trustee had told Choi, "Let's get these cases settled, I have 3 more in the pipeline.").

On January 21, 2015, Lee's new attorney, Lars Peterson, moved to withdraw as his counsel, in part because Lee had filed the motion to dismiss on a pro se basis despite being represented by Peterson at the time.  <u>See</u> ECF No. 14-5.  In connection with his pro se motion, Lee had submitted a declaration stating that he wanted to have the motion to dismiss heard before the upcoming trial.  <u>See</u> ECF No. 14-5, PageID # 781.

On January 27, 2015, Lee and his wife filed a pro se motion to continue the trial date.  <u>See</u> ECF No. 8-7.  Lee also filed a motion to shorten time so that the motion to dismiss could be heard before the trial scheduled to begin on February 2, 2015.  <u>See</u> ECF No. 8-8.  The motion to shorten time was granted, and the hearing on the motion to continue the trial date was set for February 2, 2015, right before the trial was to start.  <u>See</u> ECF No. 8-9.

The bankruptcy judge began proceedings on February 2, 2015, by stating that, after addressing the motion to withdraw as counsel, he wanted to take up a matter not on the calendar--Lee's motion to dismiss.  The bankruptcy judge noted that he had denied

4

the motion to shorten time for the motion to dismiss, but, in preparing for the hearing, thought the motion should be taken up before trial.  The bankruptcy judge noted that an opposition to the motion to dismiss had been filed and that "Everybody's here." See ECF No. 7-13, PageID # 357.

Referring to the motion to withdraw, Lee told the bankruptcy judge that he wanted Peterson to represent him with respect to the adversary proceeding.  See Transcript, U.S. Bankr. Ct. # 14-90003, Docket # 329, Page 6 of 26.  Peterson indicated that he was ready to proceed with the adversary proceeding trial. The bankruptcy judge then granted Peterson's motion to withdraw, except with respect to the adversary proceeding.  Id., Page 7 of 26.

Turning to Lee's motion to dismiss, the bankruptcy judge asked Lee and Peterson whether there was anything they wanted to tell him other than what had been submitted in writing. Lee responded only that he thought the trustee had made comments that were out of line (presumably referring to the alleged comments to Choi) that put Lee at a disadvantage, and that Lee thought there was a cover up.  Neither Lee nor his attorney objected to the bankruptcy court's proposal that it address Lee's motion to dismiss at that time.  Id., Pages 7 and 8 of 26.

The bankruptcy judge proceeded to deny the motion to dismiss, saying there was a dispute about what had been said by

5

the trustee to Choi and that it appeared Lee had heard something different from what everybody else involved heard.  See ECF No. 7-13, PageID # 359.  The bankruptcy judge then stated that, even assuming what Lee contended was true, dismissal would not be the appropriate remedy.  Instead, the bankruptcy judge thought replacement of Choi might be more appropriate, but that had already occurred.  Replacement of the trustee might alternatively be considered but was not being requested.  Id.

The bankruptcy court then turned to the motion to continue trial, which the court denied.  See Transcript, U.S. Bankr. Ct. # 14-90003, Docket # 329, Page 19-25 of 26.  Because the motion to continue was premised on the need to decide the motion to dismiss before trial, and because the motion to dismiss was being denied, Lee himself appeared to be saying that denial of the motion to continue would be appropriate.  Id. at 19 of 26.

At trial on February 2, 2015, Choi was the first witness.  He testified that he had two face-to-face meetings with Lee in September 2010.  See Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 330, Page 52 of 111.  Choi reiterated that, at the meeting of creditors pursuant to 11 U.S.C. § 341, he had stated that he had met with Lee in September 2010 to discuss a potential bankruptcy and exemptions.  See ECF No. 14-7, PageID # 794.  With respect to the Palua Place properties, Choi testified that he and Lee talked about the benefits of putting the properties into

6

tenancies by the entirety.  See Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 330, Page 76 of 111.

The second trial witness was Darryl Masagatani of the State of Hawaii Department of Taxation.  Masagatani's direct testimony was in the form of a declaration that was received into evidence.  See ECF No. 14-17 (copy of declaration); Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 330, Page 79 of 111. Masagatani indicated that Lee owed $1,656,660.68 in taxes.  Id. at 83 of 111.  Masagatani could not explain, based on what he had before him, how that number had been calculated.  See id. at 87 of 111.  However, on redirect examination, Masagatani, after reviewing an exhibit, was able to say that the total included $1,384,000 owed for general excise taxes from 2006 to 2009.  Id. at 98 of 111.

On February 3, 2015, Thomas Oh of Central Pacific Bank testified.  See ECF No. 14-14, PageID # 822; U.S. Bankr. Ct. # 14-90003, Dkt. # 331, Page 4 of 159.  Oh noted that Lee had defaulted on one of his loans with Central Pacific Bank in January 2010, pertaining to a Liholiho project.  See id., Page 11 of 159.  Central Pacific Bank agreed to a discounted settlement of that matter.  See id., page 76 of 159.  Central Pacific Bank also foreclosed on property Lee had on Kinau Street.  See id., Page 137 of 159.

On February 3, 2015, John Michael Friedel of the City
and County of Honolulu Department of Planning and Permitting
testified.  His direct testimony was submitted via a declaration.
See ECF No. 14-10 (copy of declaration); Docket No. 331
(transcript of proceedings), Page 102 of 159.  He testified that
the Department of Planning and Permitting issued a notice of
violation to Lee concerning unpermitted plumbing on one of his
projects.  Friedel further testified that, because Lee did not
correct the problem, the city issued a notice in January 2010
that required Lee to correct the problem and to pay a civil fine
of $1000 for the violation.  The notice of violation also
required Lee to pay a fine of $1000 per day for each day the
violation remained uncorrected beyond February 22, 2010.  Friedel
testified that $64,000 in fines remained unpaid as of January 5,
2015.  See ECF No. 14-10, PageID #s 805-06.  Friedel acknowledged
that a reduction of the fine to 10% of the assessed amount was
common for first-time violators.  See U.S. Bankr. Ct. # 14-90003,
Docket No. 331, Page 104-05 of 159.

Friedel also testified that Lee received a notice of
violation for electrical work, that Lee did not correct the
problem, and that Lee was being fined $1000 per day for that
violation.  Friedel testified that Lee owed $341,000 in that
regard as of October 10, 2010, and that as of January 5, 2015,

the total owed was $1.491 million.  See ECF No. 14-10, PageID
# 806.

Adam Lee testified on February 3, 2015.  See
Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 331, 118 of 159.
Lee testified that he conveyed the Palua Place properties to
himself and his wife because they had gotten married in 2010 and
wanted to live in the properties.  Lee understood that a tenancy
by the entirety was beneficial for a married couple.  Id., Page
140-141 of 159.

Lee indicated that, when he went to see Choi in
September 2010, he took with him a fax transmittal from the
Department of Taxation that indicated that Lee had been selected
for an audit of his 2006 to 2008 tax returns.  Id., Page 127 of
159.  He also stated that one reason he went to see Choi was that
Central Pacific Bank, one of his creditors, had foreclosed on one
of his properties.  See id., Page 143 of 159.

On August 3, 2011, the Department of Planning and
Permitting recorded a $701,000 lien against Lee's property.  See
U.S. Bankr. Ct. # 14-90003, Dkt. # 70, Page 4 of 4.

Lee continued his testimony the following day, February
4, 2015.  See Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 332,
3 of 115.  Lee testified that Choi had told him in passing to
transfer his property to a tenancy by the entirety.  Id., Page 6
of 115.  Lee stated that, although he had a "massive net worth,"

9

he wanted to protect his interests in property in case a deal with Central Pacific Bank fell through.  Id., Page 8 of 115.  For that reason, Lee was considering bankruptcy as an option.  Id., Page 11 of 115.  Lee admitted that he knew that creditors could not reach properties held by tenants by the entirety.  Id., Page 20 of 115.  In fact, Lee acknowledged having given deposition testimony stating that he conveyed his personal residence to himself and his wife as tenants by the entirety to protect it in the event things went wrong.  Id., Page 23, of 115.  Lee was experienced in real estate development, having begun condominiumizing projects in 2003 and having completed over 25 such projects.  Id., Page 32-33 of 115.  Lee recognized that his continuing involvement with "projects" raised the potential that he would have future creditors.  Id., Page 25 of 115.

Lee admitted having failed to file tax returns in 2010. Id., Page 65 of 115.  In December 2010, the State of Hawaii Department of Taxation placed a $22,000 lien on one of the Palua Place properties.  See Schedule D--Creditors Holding Secured Claims, ECF No. 7-4, PageID # 205.  After an audit, the state alleged that Lee owed more than one million dollars.  See Transcript, U.S. Bankr. Ct. # 14-90003, Dkt. # 332, 66 of 115.

On February 27, 2015, the bankruptcy judge issued his thorough and well-reasoned Findings of Fact and Conclusions of Law.  He found that Lee was a successful real estate investor

facing serious financial challenges by 2010.  <u>See</u> ECF No. 9-1, PageID #s 680-81.  The State of Hawaii Department of Planning and Permitting had begun fining Lee $1000 per day beginning in October 2009.  On August 1, 2011, it had placed a $701,000 lien on Lee's property.  <u>Id.</u>, Page 3 of 18.  The bankruptcy judge found that Lee also had tax problems, including being notified in August 2010 that he was being audited for tax years 2005 to 2008. The bankruptcy judge noted that, at the conclusion of the audit in 2013, Lee was assessed over $1.6 million.  He noted that Lee has not filed any tax returns since 2010.

The bankruptcy judge found that Lee met with Choi in late September 2010 regarding bankruptcy issues.  On October 1, 2010, within days of meeting with Choi, Lee transferred the Palua Place properties to himself and his wife as tenants by the entirety.  <u>See</u> ECF No. 9-1, PageID # 686.  The bankruptcy judge found that, based on Choi's testimony, there was "clear and convincing evidence [] that Mr. Lee transferred his interest . . . with actual intent to hinder, delay, or defraud his existing and future creditors."  <u>Id.</u>  The bankruptcy judge viewed Lee's own testimony as supporting this fraudulent intent, noting that Lee had met with Choi to discuss "exemption planning," and that Lee had conceded that he was involved with a high-risk business that made it advisable to hold his personal property in a tenancy

by the entirety to protect it from creditors.  <u>Id.</u>, PageID # 687-88.

Based on these fraudulent intent findings, the bankruptcy judge concluded that the transfers of the Palua Place properties were "subject to avoidance" under 11 U.S.C. § 544(b) and sections 651C-4(a)(1) and 651C-7(a)(1) of Hawaii Revised Statutes.  <u>Id.</u>, PageID # 694-95.

**III.      STANDARD OF REVIEW.**

The granting or denial of a continuance is a matter within the discretion of the bankruptcy judge and will be reversed only when the bankruptcy judge abuses his of her power.  <u>See</u> <u>In re Leonetti</u>, 28 B.R. 1003, 1008 (E.D. Pa. 1983).  Similarly, a court's determination as to whether to hold a hearing is reviewed under the abuse of discretion standard.  <u>See</u> <u>United States v. Peninsula Commc'ns, Inc.</u>, 287 F.3d 832, 839 (9th Cir. 2002).

This court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  <u>See</u> <u>In re Kimura (United States v. Battley)</u>, 969 F.2d 806, 810 (9th Cir. 1992) ("The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.").  The court "must accept the Bankruptcy Court's findings of fact, unless the court is left with the definite and firm conviction that a mistake has been committed.  Mixed questions of law and fact are reviewed de novo."  <u>In re JTS</u>

<u>Corp.</u>, 617 F.3d 1102, 1109 (9th Cir. 2010) (quotation marks and citations omitted).

IV.      **ANALYSIS.**

      **A.   The Bankruptcy Judge Did Not Abuse His Discretion In Hearing Lee's Motion to Dismiss Before the Start of Trial, Instead of Continuing the Trial.**

A mere two weeks before trial was set to begin, Lee filed a motion to dismiss and asked the bankruptcy judge to hear the motion to dismiss on an expedited basis. When his motion to expedite the hearing was denied, Lee filed a motion to continue the trial. Immediately before trial began and before hearing the motion to continue trial, the bankruptcy judge told the parties that he had changed his mind about expediting the hearing on the motion to dismiss and thought addressing the motion to dismiss before trial started was appropriate after all. The bankruptcy judge had received briefing on the motion and asked the parties whether they had anything they wanted to add to what was in their briefs. Receiving no new material, the bankruptcy judge denied the motion to dismiss, noting that dismissal of the bankruptcy cases was not an appropriate remedy for the alleged violations.

Lee argues that the bankruptcy judge abused his discretion in deciding to hold the hearing immediately before trial. Lee argues that he was "surprised" by the decision to address his motion before trial, rather than after it. <u>See</u> ECF No. 7, PageID # 152. Had the motion been later, Lee says he

could have obtained "further supporting evidence" and would have had an evidentiary hearing.

The bankruptcy judge did not abuse his discretion with respect to the timing of the hearing on the motion to dismiss or the refusal to continue the trial in light of the motion to dismiss.

First, the motion to dismiss was untimely, having been filed right before trial and after the dispositive motions deadline, even though Lee knew the bases for his motion to dismiss for months.

Second, the bankruptcy judge did not abuse his discretion in deciding to adjudicate a motion to dismiss before trial began.  Had the motion to dismiss been granted, it would have kept the court and the parties from wasting their time in trial.

Third, the parties did not object to the court's proposal to address the motion to dismiss right before trial when the judge presented the proposal.  To the contrary, this was the very timing that Lee had originally asked for and essentially amounted to a reconsideration by the bankruptcy judge of his earlier denial of Lee's request for an expedited hearing.

Fourth, the bankruptcy court did not abuse its discretion because the relief the motion sought, dismissal of the

bankruptcy proceedings, was not an appropriate remedy for the alleged violations, as explained by the bankruptcy judge.

Finally, the bankruptcy court did not abuse its discretion by failing to announce the standard it was applying in adjudicating the motion to dismiss because the motion clearly sought inappropriate relief.  In other words, the motion to dismiss was properly denied, as Lee failed to demonstrate that dismissal of the adversary proceeding was appropriate under the circumstances.

Accordingly, the court affirms the bankruptcy judge. In so ruling, this court is unpersuaded by Lee's argument that, had the hearing on the motion to dismiss been continued, he might have been able to present evidence warranting dismissal.  He has not specifically identified any such evidence.  Lee was asked by the bankruptcy judge whether there was anything else he wanted to present.  Lee failed to present any evidence at that time, and even now fails to indicate what he could have provided if only the hearing had been later.  He merely asserts that an evidentiary hearing could have been held at which he might have produced unidentified evidence.  On this record, Lee fails to show any abuse of discretion.

Even assuming that, with a short delay, Lee could have produced evidence supporting his version of what the trustee allegedly said, the bankruptcy judge did not abuse his discretion

in declining to continue the trial to allow for discovery.  Lee
had the factual bases for his motion to dismiss at least by
October 2014.  His delay of several months, until after the
dispositive motions cutoff and until immediately before trial,
raises the possibility that Lee filed the motion to delay trial.
Lee himself had asked for an expedited hearing and neither
objected at the time to the holding of the hearing nor identified
at the hearing anything else that he wanted to include in the
record.  The bankruptcy judge therefore cannot be said to have
abused his discretion in deciding to hear the motion to dismiss
before the start of trial.

> **B.   The Bankruptcy Court Did Not Clearly Err in
> Finding That Lee Had Fraudulently Transferred His
> Palua Place Properties to Avoid Creditors' Claims.**

Lee says that the bankruptcy court clearly erred in
finding that he transferred the two Palua Place properties to
himself and his wife, as tenants by the entirety, with the actual
intent to hinder, delay, or defraud existing and future
creditors, rendering the transfers voidable.  This court is not
left with a definite and firm conviction that a mistake was
committed by the bankruptcy judge.  Even if the trial evidence
could have supported a contrary finding, the bankruptcy judge was
in the best position to judge the credibility of the witnesses.
This court therefore finds no clear error in the bankruptcy

judge's factual determination, which is supported by substantial evidence.

This court readily finds support in the record for the bankruptcy judge's finding that, at the time Lee transferred the Palua Place properties in October 2010, he was in serious financial difficulty. As the bankruptcy judge noted, Lee, although previously a successful real estate investor, was, by 2010, being cited by the State of Hawaii Department of Planning and Permitting for violations of law and was being fined every day. By the time Lee went to see his attorney in September 2010, one of his properties was being foreclosed on by Central Pacific Bank, and Lee had received a notice that his tax returns for 2005 to 2008 were being audited. Those audits ultimately resulted in a determination that Lee owed more than $1.3 million in general excise taxes. Lee also had failed to file his 2010 tax return and has not filed a tax return since.

When Lee met with Choi in September 2010, they discussed what assets were exempt in a possible bankruptcy proceeding. They also discussed the benefit of holding property in a tenancy by the entirety. Shielding property from creditors is one such benefit.

Shortly after Lee met with Choi, Lee transferred the Palua Place properties to himself and his wife as tenants by the entirety. Although Lee says this was nothing more than sound

17

financial planning, the court cannot say that the bankruptcy judge clearly erred in finding that, given the circumstances, the transfers were made to avoid creditors' claims.  Lee was in a business that carried inherent risks.  He had known creditors and known financial difficulties.  The evidence certainly supports the bankruptcy judge's determination that Lee made the transfers with the actual intent to hinder, delay, or defraud one or more creditors.

In so ruling, the court is not saying that any transfer of property to a tenancy by the entirety is inherently or necessarily fraudulent.  Nor is the court saying that a transfer to a tenancy by the entirety is always fraudulent if the transferor has any debt or any financial difficulty at all.  The court is only ruling that the constellation of facts before the bankruptcy judge in this case is sufficient to support his determination that Lee's transfers were made with the intent to hinder, delay, or defraud one or more of his creditors.

This court is not disputing that a different judge might, based on the evidence, have determined that Lee had no such fraudulent intent.  But the standard this court applies here is not whether a different conclusion could have been reached.  Rather, this court defers to the bankruptcy court's reasonable interpretation of the evidence, conscious that the bankruptcy court, having tried the case, was in a superior position to

18

evaluate the evidence and determine which testimony to believe. See, e.g., Husain v. Olympic Airways, 316 F.3d 829, (9th Cir. 2002) (noting that the trier of fact is "in a superior position to appraise and weigh the evidence, and its determination regarding the credibility of witnesses is entitled to special deference"); de la Fuente v. F.D.I.C., 332 F.3d 1208, 1221 (2003) (stating in the context of an administrative appeal that the trier of fact is in a superior position to evaluate conflicting testimony). "If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous." In re Beauchamp, 236 B.R. 727, 729-30 (9th Cir. B.A.P. 1999).

**V.       CONCLUSION.**

This court affirms the bankruptcy court rulings challenged by Lee on this appeal. This court determines that there was no abuse of discretion in the bankruptcy court's decision to hear Lee's motion to dismiss immediately before trial, and that there was no clear error in the bankruptcy court's finding that Lee fraudulently transferred the Palua Place properties to avoid creditors' claims.

This order disposes of all issues in this appeal. The Clerk of Court is therefore directed to enter judgment against Lee and to terminate this appeal.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 21, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

In re Adam Lee, Civ. No. 15 00100 SOM; ORDER AFFIRMING BANKRUPTCY COURT ORDERS